**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **DUSTIN WILSON,** | ) | Civil Action No. 7:19cv00414 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SGT. MILLER,** | ) | By: Norman K. Moon |
| Defendant. | ) | Senior United States District Judge |

In this action brought pursuant to 42 U.S.C. § 1983,[1] *pro se* Virginia inmate Dustin Wilson asserts two claims against a single defendant, Sgt. Miller, a correctional officer at the New River Valley Regional Jail ("NRVRJ"). Both claims stem from an April 5, 2019 altercation in the booking area of NRVRJ. Pending before the court are: (1) Miller's motion to dismiss or, in the alternative, for summary judgment; and (2) a document filed by Wilson and docketed as a motion for extension of time. Both are addressed in this opinion. For the reasons set forth herein, I will deny the motion for extension and grant in part and deny in part the summary judgment motion. The excessive force claim will be set for a bench trial.

## I. BACKGROUND

The evidence in the record includes affidavits filed in support of the summary judgment motion and Wilson's affidavit filed in opposition.[2] As I must, I construe all facts in the light most favorable to Wilson, the non-moving party. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

On April 5, 2019, at approximately 5:30 p.m., Wilson was escorted to booking to be

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] Wilson's complaint is not verified, so I do not consider statements therein as evidence in opposition to the summary judgment motion. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (noting that facts in a verified complaint, if based on personal knowledge, can be treated as evidence in opposition to summary judgment).

transported to the Roanoke City Jail. At 5:45 p.m., a Roanoke Sheriff's Deputy, Sgt. Sabanovic, arrived to transport him. Miller was in the booking area and handling the release of Wilson's clothing and personal property.

According to affidavits submitted by Miller and Officer Fender, who was present during the event, Wilson was in front of the booking desk, going through his property box, while Sabanovic stood near Wilson in front of the booking desk. Miller was behind the desk. Wilson asked Miller for a trash bag, at which point Sabanovic informed Wilson that he could only take his hygiene products and clothing with him. (Miller Aff. ¶¶ 3–4; Fender Aff. ¶¶ 2–3.)

From there, the parties' versions of events diverge. Wilson's affidavit states that he and Sabanovic began "debating why [his] property couldn't be transferred with him." According to Wilson,

> Sgt. Miller then interrupted stating either take what he says you can have or I can throw it away. I told him "You ain't gonna thrown nothin of mine away." Sgt. Miller then made way to my property box and attempted to grab it when I grabbed it back and then placed the box on the floor without its top. At this time Sgt. Miller stated, "oh you done fucked up now I'ma beat yo ass." And began to walk around the counter and took a fighting stance with me.[3] Upon doing so, Sgt. Sabanovic stated that the situation was not "worth it" and to just take what I was allowed to take.
>
> At this point, I stopped and turned around toward Sgt. Sabanovic and my property box and began taking what I could out of my box when I was attacked by Sgt. Miller and we began to scuffle. In which I started to defend myself.
>
> After falling to the floor, Sgt. Sabanovic requested I stop and place my hands behind my back but because of my resistance he began to pepper spray me, and then I was handcuffed. I was then being escorted by several officers when Sgt. Miller pushed me into a holding cell and Officer Fender instructed . . . to stop because it was enough.
>
> Afterwards I was [led] to a shower for decontamination and then I was escorted to leave. Upon leaving, . . . I request about my

---

[3] In his complaint, Wilson states that both he and Miller took a fighting stance. (Compl. 2, Dkt. No. 1.)

> personal property in which I was told it would be thrown away by Sgt. Miller and . . . I began to cuss again while leaving the facility.

Wilson Aff, Dkt. No. 15-1.[4]

Defendants agree that Wilson and Sgt. Sabanovic were arguing, and they allege that Wilson was using profanity, yelling it was "fucking bullshit" that the Roanoke facility would not accept his commissary items.[5] Miller avers that he attempted to help Wilson understand the restrictions, and informed Wilson that he could complete a property release form and have a family member pick up his commissary items from the NRVRJ. Wilson continued to protest, including using profanity. Eventually Wilson jerked the property box away from Miller, who was trying to reach for it, causing the box to be in Miller's possession, but the lid in Wilson's possession. Miller alleges that he walked around the desk to try and retrieve the property box lid from Wilson, at which point Wilson squared up in a fighting stance, raised both of his fists, and threatened to "fuck [Miller] up." (Miller Aff. ¶¶ 4–5; Fender Aff. ¶¶ 3–5.)

At that point Sabanvoic told Wilson to stop or he would pepper spray him. Immediately thereafter, Wilson turned his body toward the booking officer's desk. Because the desk contained objects that could have been used by Wilson as weapons, Miller grabbed both of Wilson's arms and "placed him on the ground on his stomach," to protect the officers in the vicinity. Miller alleges that Wilson kept resisting, that Sabanovic told Wilson he would be pepper sprayed if he did not stop resisting. Sabanovic eventually pepper sprayed Wilson and then the officers were able to handcuff Wilson. The officers deny that they used knee strikes or handstrikes during the altercation. (Miller Aff. ¶¶ 6–8; Fender Aff. ¶¶ 6, 9.)

---

[4] Ellipses in the affidavit reflect text that is illegible. Wilson's handwriting is sometimes difficult to read, but most of what he states in his filings is decipherable. Going forward, Wilson is advised to write as legibly as possible in documents he submits to the court.

[5] Wilson does not deny using profanity in his affidavit, so I treat the testimony of Miller and Fender on that point as true.

With regard to the disposition of Wilson's property, Miller alleges that, as Wilson was leaving, Miller told him that a family member could pick it his property within thirty days, even though Wilson had not filed a property release form. Miller then bagged up the property to be stored at the Jail for thirty days. Miller avers that he did not destroy the property. (Miller Aff. ¶¶ 10–12.) There is nothing in the record to indicate whether the property was in fact destroyed or by whom.

Wilson avers, however, that within that thirty-day period—on April 26, 2019—his family made four calls to the NRVRJ wanting to pick up his property. They were told by an officer named "Charlie" that the property had already been destroyed. Based on that, Wilson states that he has evidence of his attempt to obtain his property within the thirty-day time frame defendants claim that he failed to meet. (Wilson Aff. ¶ 4, Dkt. No. 15-1.)

Based on these facts, I construe Wilson's complaint as asserting a claim of deprivation of property without due process and an excessive force claim.

## II.  DISCUSSION

**A.  Wilson's motion for extension (Dkt. No. 15)**

Turning first to Wilson's pending motion, which has been docketed as a motion for extension (Dkt. No. 15), it indeed asks for an extension of time to respond to the summary judgment motion. But Wilson seems to be asking for an extension of time to obtain and provide additional evidence to respond to the summary judgment motion, akin to a request for relief pursuant to Federal Rule of Civil Procedure 56(d). In particular, most of his motion talks about evidence, documents, or discovery that he wants or needs. His motion also includes his own affidavit disputing defendant's version of events.

It is unnecessary to grant an extension or to postpone resolution of the summary judgment motion, however. First, as to his due process claim, Wilson states that he is seeking

4

recordings of phone calls that will show that he attempted to obtain his property within the thirty-day time-frame that defendant states plaintiff failed to meet. As discussed below, however, even treating as true that he attempted to obtain his property within the thirty-day period (which is alleged in his affidavit in any event), his due process claim against Miller still fails, both because he has not provided any evidence to show that Miller was responsible for the destruction of his property and because he has not shown that he lacks an adequate post-deprivation remedy. Wilson does not reference any evidence that he seeks that would contradict those two points. Thus, there is no need to postpone resolution of the summary judgment motion to allow him to gather that evidence.

As to the excessive force claim, and as discussed in more detail below, Wilson's affidavit alone clearly creates disputes of fact as to whether Sgt. Miller used excessive force. Thus, summary judgment as to the excessive force claim will be denied. In light of those rulings, it is not necessary to allow additional discovery for Wilson at this time because defendant's motion for summary judgment on this claim must be denied regardless. Thus, Wilson's motion for extension (Dkt. No. 15) is DENIED. The parties will be given time for pre-trial discovery, however, to allow them both to obtain evidence for use at trial. Accordingly, the trial in this matter will be set for at least six months from the entry of the accompanying order, and the parties shall have 120 days from the same date to engage in discovery relevant to the excessive force claim.

**B. Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. No. 12)**[6]

**1. Summary Judgment Standard**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any

---

[6] Because the parties have submitted materials outside the pleadings, and I have considered them, I treat defendant's motion as one for summary judgment. Fed. R. Civ. P. 12(d).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, I must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

**2. Due Process Claim**

Turning first to Wilson's due process claim, it seems to allege either that Miller intentionally destroyed his property or that it was otherwise destroyed without due process. This claim fails for several reasons.

First and most importantly, Wilson offers no evidence, based on personal knowledge, that Miller himself—the only named defendant—destroyed or improperly disposed of his property. Even if it was later destroyed improperly, then, Wilson has not put forth any factual basis from which a reasonable factfinder could conclude that Miller was the person who destroyed it.

Second, Wilson's claim fails because he has not put forth any evidence to show that he had no adequate post-deprivation remedy. Allegations that an inmate was deprived of his

6

property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The United States Court of Appeals for the Fourth Circuit thus has held that a federal district court should deny § 1983 relief if state law provides such a remedy, regardless of whether the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state. *Yates v. Jamison*, 782 F.2d 1182, 1183–84 (4th Cir. 1986).

The question of whether state law provides a remedy to Wilson is less straightforward than in a case where the conduct of state employees is concerned (such as Virginia Department of Corrections employees). In that case, it is clear that a plaintiff possesses tort remedies under Virginia state law, even for negligent destruction of property, pursuant to the Virginia Tort Claims Act ("VTCA"). *See* Virginia Code § 8.01–195.3 (waiving sovereign immunity for claims). Thus, an adequate post-deprivation remedy exists. But the VTCA does not waive sovereign immunity for regional jail authorities.[7] Thus, the determination of whether he has a remedy against the employee of a regional jail authority requires more analysis.

First of all, there is no clear answer on whether regional jail authorities enjoy sovereign immunity at all, and some courts have held that they are not immune. *See, e.g.*, *Boren v. Nw. Reg'l Jail Auth.*, No. 5:13-cv-13, 2013 WL 5429421, at *4–5 (W.D. Va. Sept. 30, 2013) (holding that a regional jail authority is neither an arm of the state nor entitled to be treated as a municipal corporation and so is not entitled to sovereign immunity); *but see Haleem v. Quinones*, No. 5:17-CV-00003, 2017 WL 4400767, at *2 (W.D. Va. Sept. 30, 2017) (citing cases reaching different

---

[7] Wilson is not claiming that his property was destroyed pursuant to a prison policy, so I need not address the slightly different analysis for a deprivation pursuant to policy, which can sometimes require pre-deprivation procedures. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful).

7

results on the issue and concluding that regional jail authorities are entitled to sovereign immunity). If they are not immune, then Wilson could bring a negligence action in state court against Miller or anyone involved in the destruction of his property, which would be an adequate post-deprivation remedy.

Moreover, even if regional jail authorities have sovereign immunity, there still is clearly a post-deprivation remedy in state court for an *intentional* destruction of his property—which is what Wilson appears to allege—because sovereign immunity does not provide protection for intentional or grossly negligent acts in any event. *Colby v. Boyden*, 400 S.E.2d 184,186–87 (Va. 1991) (sovereign immunity shields employees from liability for acts of simple negligence where the acts are discretionary and not ministerial, but does not shield the employee from liability for gross negligence or intentional acts). Put differently, Wilson's claim that Miller intentionally deprived him of his property would not be barred by sovereign immunity even if such immunity applies to employees of NRVRJ. *See id.*

Regardless, and as noted at the beginning of this section, there is no evidence that Miller was responsible for the destruction of Wilson's property, as opposed to any other individual.

For all of these reasons, Miller is entitled to summary judgment on Wilson's due process claim.

### 3. Excessive Force Claim

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To succeed on an excessive force claim, a plaintiff must show that the prison official (1) used "nontrivial" force (objective component), *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and (2) acted with "wantonness in the infliction of pain" (subjective component), *Whitley*, 475 U.S. at 322. In the prison context, analysis of the subjective component "ultimately turns on whether force was

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see Wilkins*, 559 U.S. at 34.

Miller seeks summary judgment on Wilson's excessive force claim on two grounds. First, he contends that Wilson does not allege that he suffered any injury, or more than a de minimis injury, as a result of either Miller placing him on the ground or Miller pushing him into his cell after the incident. He asserts that the objective inquiry of an Eighth Amendment claim requires that the force used be "nontrivial" *and* that the injury inflicted be more than de minimis. (Mem. Supp. Mot. Summ. J. 10, Dkt. No. 13.) Miller is only partially right about the legal standard.

The Supreme Court expressly held in *Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010), that an inmate is not required to show that he suffered more than a de minimis injury to satisfy the objective prong. Instead, the objective prong asks whether the *force* used was more than de minimis force, which is the analysis required. *Hill v. Crum*, 727 F.3d 312, 320–21 (4th Cir. 2013) (recognizing that it is "the nature of the force, rather than the extent of the injury, [that] is the relevant inquiry"). Although the lack of any injury is a factor that can be considered in determining whether the force used was de minimis, then, Miller's statement of the legal standard is incorrect.[8] *See id.* Analyzing Miller's two alleged uses of force—the grabbing of

---

[8] Wilson does not allege in his complaint or in his affidavit what injuries, if any, he suffered in the altercation with Miller.

9

Wilson from behind and moving him on the ground and the push into the cell—under the proper standard, there is a dispute of fact as to whether the former was more than de minimis force, and so that claim alone survives summary judgment.

Turning first to Miller's alleged "push" of Wilson into a cell while he was handcuffed, such an action constitutes only a de minimis use of force. *Wilkins*, 559 U.S. at 37–38 (reasoning that a "push or shove" that causes "no discernible injury almost certainly fails to state a valid excessive force claim") (citations omitted). Wilson does not allege that the push caused him to fall or injured him in any way, and such a minor use of force does not give rise to an Eighth Amendment violation. *See id.*

Turning to whether the takedown constituted sufficient force to state a claim, however, a reasonable factfinder could find that Wilson's being "attacked" from behind, and quickly moved from a standing position to being on the floor on this stomach, may be a sufficient use of force to satisfy the objective component, even if no injury results. *E.g.*, *Murray v. Lilly*, 426 F. Supp. 3d 245, 255 (S.D.W. Va. 2019) (denying summary judgment because there was a dispute as to the amount of force used to takedown a prisoner and a dispute over whether he was resisting at the time and both factors were "central in determining whether officer actions are constitutional"); *see also Wright v. Gess*, No. 18-CV-03338-STV, 2019 WL 4464142, at *6 (D. Colo. Sept. 18, 2019) (concluding that shoving a non-resisting and handcuffed plaintiff to the ground, resulting in injuries requiring stitches could constitute excessive force). The Fourth Circuit has held that the objective component requires only something more than "de minimis" force and that it "is not a high bar." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). Here, I cannot say, as a matter of law, that the force used as alleged by Wilson was only de minimis.

Miller's second ground for summary judgment focuses on the force used and argues that it does not satisfy the subjective prong of Wilson's claim, either. In short, Miller contends that

the force was not excessive, but was a reasonable response to a dangerous situation. His argument is premised on the facts as set forth by defendants, though. When considering Wilson's affidavit, there is a dispute of material fact as to whether the force was reasonable.

It is undisputed that plaintiff had been verbally argumentative and, although he does not state in his affidavit whether he took a fighting stance, he alleged as much in his complaint, and he has not contested Miller's testimony that he did. But according to Wilson's version of events, Miller threatened him and then, at Sabonovic's urging, Wilson turned away to return to the task of sorting his property. At that moment, then, Wilson alleges he was being compliant. Nonetheless, after Wilson had again begun to sort his belongings, Miller tackled him without warning or without first asking Wilson to take any action.[9] Crediting those allegations, a reasonable factfinder could conclude that the force was not used in a "good faith effort" to maintain discipline, but was instead utilized for "the very purpose of causing harm." *Hudson*, 503 U.S. at 6.

To be sure, this is a close case, and it is possible that a reasonable factfinder could find that, in light of how agitated and argumentative Wilson had just been, and the close proximity of potential weapons, Miller's use of force was justified and a good faith effort to protect himself and other officers and to maintain discipline. The affidavits submitted by Miller describe that Wilson, in addition to being agitated, yelling, and using profanity, threatened to fight Miller and appeared to be turning toward a desk where possible weapons were. But Wilson's affidavit effectively states that Miller attacked him, when he was not fighting, was complying, and was not resisting, but instead was trying to select property from his box. If the factfinder were to believe Wilson's version of events, it reasonably could find in his favor on his Eighth

---

[9] No party describes how much time had passed between the time Wilson turned around and the time Miller grabbed him.

11

Amendment claim. For the foregoing reasons, I conclude there are disputes of fact that preclude defendant's motion for summary judgment as to the excessive force claim.

### III. CONCLUSION

For the reasons stated, I will grant in part and deny in part defendant's motion for summary judgment. An appropriate order will be entered.

**ENTER**: This 23rd day of June, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE